UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLES CLEMONS** | **CIVIL ACTION NO. 20-1465** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JAMES LEBLANC** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Petitioner Charles Clemons, a prisoner in the custody of Louisiana's Department of Corrections proceeding pro se, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. He attacks the sentence that the Third Judicial District Court, Lincoln Parish, imposed for his second-degree murder conviction. For reasons below, the Court should deny Petitioner's claim and dismiss his Petition.

### Background

The Louisiana Second Circuit Court of Appeal recounted the underlying state court procedural history as follows:

> In November of 1976, Charles Clemons ("Clemons") pled guilty to second degree murder and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the first 40 years. In accordance with *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Montgomery v. Louisiana*, —— U.S. ——, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), Clemons was resentenced to life with parole eligibility. Clemons was granted an out-of-time appeal, and seeks review of his sentence. For the following reasons, we affirm.

### FACTS

> The record shows that Clemons was indicted for the August 26, 1976, first degree murder of J.W. Sandifer ("Sandifer"), committed when Clemons was 17

years old.[1] Clemons was charged with killing Sandifer after robbing and shooting him while the two were alone in rural Lincoln Parish. A sanity commission was ordered by the trial court, and Clemons was found competent to stand trial and to assist counsel in his defense. On November 19, 1976, Clemons pled guilty to second degree murder as charged by amended indictment. He was sentenced as a first-felony offender by the trial Court "in accordance with the statute to life imprisonment."[2] The case minutes show that on the day of his guilty plea, Clemons was sentenced to life and was not "eligible for parole, probation or pardon for a period of 40 years."

On October 31, 2016, Clemons filed a "Motion Pursuant to C. Cr. P. art. 882(A) To Correct An Illegal Sentence," pursuant to *Miller/Montgomery*.[3] Clemons argued that his sentence was illegal and that under *Miller/Montgomery* he should be sentenced to a term less than life. Specifically, Clemons argued that he should be sentenced to a term of years specified for manslaughter, the next lesser included offense, which in 1976 carried a maximum sentence of 21 years at hard labor, and that he should be released.

Clemons' motion to correct illegal sentence was heard on January 17, 2017. Clemons was present and represented by counsel. Following a "meeting in chambers," the trial court noted that the state and defense had "come to an agreement on this," and that the state had provided the defense "with an order of the Court." The defense indicated its agreement to the sentence "with that stipulation based on this order," but "with certain amendments." The state addressed the trial court as follows:

We're here today for a Re-Sentencing of Mr. Clemons who is presently serving a life sentence for a homicide committed when he was a—when he was a juvenile. And under the U.S. Supreme Court decision in *Miller versus Alabama*, he is entitled to be re-sentenced. And I believe we're going to stipulate to the Court pursuant to 878.1 of Code of Criminal Procedure that Mr. Clemons be re-sentenced to life imprisonment with the eligibility of parole pursuant to 15:574.4(E) and that the Court is going to sign a judgment to the affect with the additional language that the Court recommends that once Mr. Clemons is

---

[1] At Clemons' January 17, 2017, resentencing hearing, the state conceded that Clemons was a juvenile at the time of the offense.

[2] The copies of the transcript of Clemons' November 19, 1976, guilty plea contained in the record do not contain the sentencing portion of the transcript which the minutes show occurred on that date. Nevertheless the transcript shows that as part of his plea, Clemons agreed that by pleading guilty, he would be sentenced to life and would not be eligible for parole, probation or suspension of sentence for a period of 40 years.

[3] The record shows that Clemons had filed several unsuccessful applications for post-conviction relief and motions to correct illegal sentence with the trial court.

> qualified under 574.4(E) for parole consideration that the Parole Board give him a hearing as quickly as possible.
>
> * * *
>
> The trial court did not orally amend Clemons' sentence or resentence him, instead stating that it would "incorporate that language in the final Order of the Court," which was signed on the day of the hearing and filed on January 12, 2017. In the written order, the trial court stated in relevant part:
>
> After a thorough review, the parties agree that the Defendant's sentence of life shall be imposed with eligibility for parole consideration pursuant to the provisions of La. R.S. 15:574.4(E).
>
> WHEREFORE, the Defendant's Motion to Correct an Illegal Sentence is GRANTED and the Defendant is hereby sentenced to life with eligibility for parole consideration consistent with La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E). As soon as the Defendant satisfies the eligibility requirements of the aforesaid statu[t]es, it is the recommendation and request of the Court that the Parole Board schedule a hearing as soon as possible to consider getting the Defendant parole. This is in consideration of the 41 years the defendant has already served under the original sentence.

*State v. Clemons*, 289 So. 3d 1165, 1166–67 (La. Ct. App.) (footnotes in original), *writ denied*, 300 So. 3d 399 (La. 2020).

After the trial court granted Petitioner's motion and amended his sentence, Petitioner appealed, raising the following claims:

> [1] an excessive sentence claim, arguing that the trial court failed to consider mitigating factors, including the fact that Clemons has completed many self-help programs, accepted responsibility for his actions and expressed remorse prior to resentencing. Additionally, Clemons contends that he has been rehabilitated by his many years of incarceration and has apologized to the victim's family. Ultimately, Clemons argues that based upon these facts, a downward departure from the mandatory life sentence was justified under *State v. Dorthey*, 623 So. 2d 1276 (La. 1993).
>
> [2] In his *pro se* brief, Clemons raises a claim that his guilty plea was constitutionally infirm because the trial court failed to inform him of his Eighth Amendment right "as announced by *Miller* and *Montgomery*." Clemons argues that these cases have expanded *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), to include a "fourth" right to a *Miller* sentencing hearing which must be waived during a guilty plea involving a juvenile.

*Clemons*, 289 So. 3d at 1168 (footnotes omitted). On January 15, 2020, the Louisiana Second Circuit Court of Appeal affirmed Petitioner's sentence. *Id.* at 1170.

On July 31, 2020, the Supreme Court of Louisiana denied Petitioner's subsequent application for writ of certiorari. *State v. Clemons*, 300 So. 3d 399 (La. 2020).

Petitioner filed this Petition on approximately November 9, 2020,[4] claiming: (1) "The trial court deprived [him] his liberty without the due process protection of the Eighth and Fourteenth Amendments guarantee against a disproportionate sentence as required by Miller and Montgomery [sic]"; and (2) his "guilty plea is null and void as a result of Miller v. Alabama and Montgomery v. Louisiana's substantive constitutional rule change [sic]." [doc. # 1-1, p. 1].

## Law and Analysis

### I. Standard of review

Federal courts may provide habeas corpus relief to a state prisoner under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under Section 2254(d), after a state court has adjudicated a prisoner's claims on the merits, an application for a writ of habeas corpus may be granted only if the petitioner shows that the adjudication:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

---

[4] [doc. # 1, p. 15].

4

Review under § 2254(d)(1) is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A decision is "contrary to" clearly established law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A decision involves an "unreasonable application" of clearly established law "if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id.* (citing *Williams*, 529 U.S. at 407-08). "Clearly established law" refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of relevant state-court decision." *Williams*, 529 U.S. at 412.

Section 2254(d)(2) involves a challenge to factual determinations made by state courts. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(1).

A federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). An adjudication is "on the merits" when "the state court resolves the case on substantive grounds, rather than procedural grounds." *Id.* at 946-

5

47. A federal court reviews de novo a claim not adjudicated on the merits in state court. *Hoffman*, 752 F.3d at 437.

## II. Summary Dismissal

Under Rule 4 of the Rules Governing Section 2254 Cases, "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." See *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face . . . .").

"The district court has the power under Rule 4 to examine and dismiss frivolous habeas petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'" *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (quoting 28 U.S.C. § 2254 Rule 4 Advisory committee Notes).

## III. Exhaustion

Petitioner's claims are terse and disheveled; it is therefore unclear if he presented the same claims to all levels of state court. That said, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); see also *Engle v. Isaac*, 456 U.S. 107, 121 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts."). The Fifth Circuit Court of Appeals has suggested that district

6

courts may summarily dismiss a petition if it is "perfectly clear that the applicant does not raise even a colorable federal claim," *Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999), or if "the court is convinced that the petitioner's claims lack merit," *Cox v. Stephens*, 602 F. App'x 141, 144 (5th Cir. 2015).

Below, the undersigned recommends summarily dismissing Petitioner's claims; the undersigned does not address exhaustion.[5]

## IV. Merits

Petitioner's claims are insufficient to raise a constitutional issue. "[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue [and] are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018), *cert. denied,* 140 S. Ct. 859 (2020), *reh'g denied,* 140 S. Ct. 2557 (2020).

Here, Petitioner's entire first claim reads:

> The trial court deprived Charles Clemons his liberty without the due process protection of the Eighth and Fourteenth Amendments guarantee against a disproportionate sentence as required by Miller and Montgomery.
>
> **Supporting facts**:
>
> Charles Clemons was seventeen years old. The crime as charged in the grand jury indictment was first degree murder which was later amended to second degree murder of J.W. Sandifer, Jr., on August 26, 1976, during the course of an armed robbery. There are very few facts of the incident in the record.
>
> Charles Clemons was seventeen years old at the time of this incident on August 26, 1976, an armed robbery which tragically turned into the killing of J.W.

---

[5] Petitioner filed this Petition well after his conviction became final following resentencing. Recommending summary dismissal on the merits, the undersigned does not opine on the timeliness of this Petition. See *Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting that a statute-of-limitations defense is not jurisdictional).

7

> Sandifer, Jr. He was indicted for first degree murder which was later amended to second degree murder. Clemons pled guilty on November 19, 1976 to second degree murder and sentenced to life without parole.

[doc. # 1-1, p. 1].

In *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993),[6] the petitioner presented an ineffective assistance of counsel claim in the following terms:

> A denial of the right to allocution at sentencing as well as the right to representation of counsel....
>
> [P]etitioner's Sixth Amendment (U.S. Const.) right "to assistance of counsel" in handling the "pleas agreement" ensued.

Even construing the petition liberally, the court found the allegations vague, conclusory, and thus "insufficient to raise a constitutional issue." *Id* It concluded that the petitioner did not "raise his [] claim before the district court . . . ." *Id.*

Here, Petitioner essentially: (a) asserts a legal conclusion; (b) cites two Supreme Court cases without analysis or application; and (c) briefly recounts the background of his crime without tying it to his claim. His veritably indecipherable claim, like the claim in *Pineda*, is vague, conclusory, and therefore insufficient to raise a constitutional issue. See *Mayberry v. Davis*, 608 F.2d 1070, 1072 (5th Cir. 1979) ("Petitioner's conclusionary statement, unsupported by factual allegations or proof to demonstrate prejudice, is insufficient to support a due process claim."); *Black*, 902 F.3d at 547; *Garza v. Stephens*, 575 F. App'x 404, 411 (5th Cir. 2014).

Next, Petitioner's complete second claim reads:

---

[6] *Pineda* was a proceeding arising under 28 U.S.C. § 2255. However, the Fifth Circuit, in *Black*, 902 F.3d at 547, a proceeding arising under 28 U.S.C. § 2254, cited *Pineda* for the rule that "conclusory allegations on a critical issue [] are insufficient to raise a constitutional issue." Moreover, *Pineda* relied on footnote three from *United States v. Woods,* 870 F.2d 285, 288 n. 3 (5th Cir. 1989), which in turn, relied on *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983), a case arising under Section 2254.

> Charles Clemons' guilty plea is null and void as a result of Miller v. Alabama and Montgomery v. Louisiana's substantive constitutional rule change.
>
> **Supporting facts**:
>
> During the 2016 legislative session, legislation was proposed to address those cases in which juveniles who committed murder sentenced to life without parole before Miller was decided. The Louisiana Legislature however failed to take action. Thus, when the U.S. Supreme Court invalidated the substantive penalty attached to second degree murder, Mr. Clemons sentence no longer existed. [sic].

[doc. # 1-1, pp. 1-2]. Petitioner, in sum: (a) asserts a legal conclusion; (b) cites two cases without explanation or analysis; (c) inserts a sentence fragment; (d) recounts proposed state legislation; and (e) concludes without explanation that his sentence ceased to exist following *Miller* and *Montgomery* because of failed state legislation.

In *Blackledge*, 431 U.S. at 74, the Court found that, following a guilty plea, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Here, like in *Blackledge*, Petitioner's allegations concerning his guilty plea are conclusory and unsupported by specifics. Like his first, claim, the allegations are insufficient to raise a constitutional issue. Accordingly, the Court should dismiss these claims.

Even assuming, *arguendo* and out of a plethora of caution, that Petitioner's claims were not vague and conclusory, and assuming further that Petitioner is attempting to assert the same claims he raised before the state courts, it is perfectly clear that he does not raise a colorable federal claim.

Construing Petitioner's first claim here liberally, it corresponds (to a degree) to the first claim he raised before the Louisiana Second Circuit Court of Appeal. The Second Circuit described Petitioner's claim thusly:

9

> Clemons raises only an excessive sentence claim, arguing that the trial court failed to consider mitigating factors, including the fact that Clemons has completed many self-help programs, accepted responsibility for his actions and expressed remorse prior to resentencing.[7] Additionally, Clemons contends that he has been rehabilitated by his many years of incarceration and has apologized to the victim's family. Ultimately, Clemons argues that based upon these facts, a downward departure from the mandatory life sentence was justified under *State v. Dorthey*, 623 So. 2d 1276 (La. 1993).

*Clemons*, 289 So. 3d at 1168 (footnote in original). The court concluded:

> Clemons' argument that his sentence is excessive is without merit. The sole question to be answered in a *Miller* hearing is whether the defendant should be eligible for parole. Thus, the trial court considers only whether the mandatory sentence should include parole eligibility. The issue of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor is not before the Court. . . . In this matter, Clemons received the mandatory minimum sentence available to him and he properly received a life sentence with parole eligibility under *Miller/Montgomery*.

*Id.* at 1169.

Like Petitioner's claim of "disproportionate sentence," the petitioner in *Jackson v. Vannoy*, 981 F.3d 408, 417 (5th Cir. 2020), argued that his sentence was unconstitutionally disproportionate under the Eighth Amendment because the trial court was unable to consider mitigating factors and impose an individualized sentence less that life with the opportunity for parole. Also similar to the claim here, the petitioner there demanded "a resentencing that takes his 'life and characteristics' into account." *Id.* The court rejected the claim, reasoning:

---

[7] At the time of Clemons' resentencing, the legislative response to *Miller/Montgomery* was not yet in place. Under La. R.S. 15:574.4(B), as it read at that time, it appears that Clemons was not entitled to parole eligibility because he had a life sentence. Accordingly, a judicial pronouncement of parole eligibility for a defendant in Clemons' position appears to have been proper. Effective November 1, 2017, however, La. R.S. 15:574.4(H) was enacted to specifically address those defendants convicted of second degree murder between 1973 and 1979 to provide for parole eligibility after 40 years. See also *State v. Palmer*, 51,840 (La. App. 2 Cir. 1/10/18), 246 So. 3d 660; *State v. Brooks*, 52,334 (La. App. 2 Cir. 11/14/18), 260 So. 3d 713, *writ denied*, 18-2031 (La. 4/15/19), 267 So. 3d 1121; *State v. Lewis*, 17-0651 (La. App. 4 Cir. 4/18/18), 244 So. 3d 527; *State v. Thomas*, 17-620 (La. App. 3 Cir. 12/6/17), 258 So. 3d 17.

10

> Jackson misapprehends the constitutional right recognized in *Miller*. The Supreme Court held only that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison *without* possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479, 132 S.Ct. 2455 (emphasis added). It does not disallow sentences of life imprisonment *with* the opportunity for parole for a juvenile homicide offender. Nor is it clearly established that courts must consider mitigating factors of youth before imposing such a sentence. Presently, all that is clearly established is that a sentencing court must consider youth-related mitigating factors in those cases in which it *does* impose a juvenile life-without-parole sentence. *Id.*; *see also Montgomery*, 136 S. Ct. at 733. Jackson's case is not among them.

*Id.* at 417.

Here, the trial court amended Petitioner's sentence to life with eligibility for parole consideration. As explained in *Jackson*, the trial court was not required under either *Miller* or *Montgomery* to hold a hearing and consider mitigating factors before amending his sentence. Accordingly, the state appellate court's decision on Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Construing Petitioner's second claim liberally, it moderately corresponds to the second claim he raised before the Louisiana Second Circuit Court of Appeal. There, the Second Circuit wrote:

> In his *pro se* brief, Clemons raises a claim that his guilty plea was constitutionally infirm because the trial court failed to inform him of his Eighth Amendment right "as announced by *Miller* and *Montgomery*." Clemons argues that these cases have expanded <u>Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)</u>, to include a "fourth" right to a <u>Miller</u> sentencing hearing which must be waived during a guilty plea involving a juvenile.

*Clemons*, 289 So. 3d at 1168. Rejecting his claim, the court concluded:

> As discussed herein, *Miller* held only that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," and *Montgomery* made this holding retroactive. These cases nowhere add a fourth right to *Boykin v. Alabama*, *supra*, which must be

11

>      waived during a juvenile's guilty plea. Thus, Clemons' *pro se* argument is meritless.

*Id.* at 1169.

The state appellate court is correct. In *Miller v. Alabama*, 567 U.S. 460, 465 (2012), the Court held only that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" In *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court held that *Miller* applies retroactively. Neither *Miller* nor *Montgomery* required the trial court to inform Petitioner of any right announced in *Miller* or *Montgomery* prior to, or following, his guilty plea. Plainly, the state appellate court's decision on Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.

Finally, out of even more caution, and assuming for the sake of argument that the state appellate court misconstrued Petitioner's second claim, Petitioner does not, even under *de novo* review, state a colorable federal claim. Rather than arguing, as the state appellate court construed the claim, that Petitioner must have either waived a right in *Miller* and *Montgomery* prior to pleading guilty or had a hearing under *Miller* prior to sentencing, Petitioner seems to claim that following *Miller* and *Montgomery* he can no longer be convicted of second-degree murder because the only sentence for second-degree murder, life in prison without parole,[8] "no longer existed" for those under the age of 18 at the time of their crimes. In other words, he

---

[8] "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." LA. REV. STAT. § 14:30.1(B).

12

seems to claim that because he cannot be sentenced to the only sentence approved for second-degree murder, he cannot be convicted of second-degree murder.

The petitioner in *Jackson* attempted the same argument. There, the Fifth Circuit opined:

> The first two issues that Jackson seeks to certify for appeal share the same premise: that his new sentence is without legislative authorization. Louisiana's second-degree murder statute prescribes only one possible penalty irrespective of the offender's age: *mandatory* "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La. R.S. 14:30.1(B). Under *Miller* and *Montgomery*, that sentence cannot constitutionally be applied to those who were juveniles when they committed their underlying offenses, including Jackson.
>
> For that reason, in 2013, the Louisiana Legislature passed two statutes—La. Code Crim. Proc. art. 878.1 and La. R.S. 15:574.4—that aimed to cure unconstitutional life-without-parole sentences through hearings on consideration for parole eligibility. But Jackson argues that these provisions do not cure the constitutional defect in his situation. First, he notes that neither statute "embed[s] ... a specific range of punishment" in the statute governing the substantive offense of second-degree murder, which to this day mandates life without parole. Second, Jackson stresses that, at the time of his October 2016 resentencing, the two statutes applied only prospectively to new prosecutions postdating the statutes' 2013 effective dates. Jackson takes this to mean that the Louisiana Supreme Court lacked the power to order that the statutes be applied retroactively to cases like his. As a result, Jackson argues, the "statutory text" neither gives "fair notice of the substantive penalty with a specific range for the offense" nor authorizes the particular "substantive penalty" that has been imposed on Jackson. This argument is not without some logical appeal.
>
> The thrust of Jackson's argument has met with success elsewhere. In *United States v. Under Seal*, the federal government attempted to prosecute a juvenile offender as an adult under a federal statute that prohibits murder in aid of racketeering. 819 F.3d 715, 717 (4th Cir. 2016). That statute provides for only two punishments: death or life without parole. *Id.* at 718, 719 & n.4 (citing U.S.C. § 1959(a)(1)). Like Louisiana's second-degree murder statute, therefore, the federal statute does not authorize any punishment that may be constitutionally imposed on juvenile offenders. The government conceded as much before the Fourth Circuit but argued that the court could sever the unconstitutional mandatory minimum of life imprisonment and employ the sentencing range of any term of years up to a discretionary maximum sentence of life applicable to a separate kidnapping offense in the same subsection. *Id.* at 721. But the court rejected that invitation as "nothing less than judicial legislation pure and simple." *Id.* at 725–26 (citation omitted). Because the statute did not authorize any penalty that could constitutionally be imposed on

13

the juvenile defendant and did not provide fair warning of any judicially crafted lesser penalty, the court held that the prosecutions could not constitutionally proceed. *Id.* at 726–28.

This court has not squarely addressed the subject, but it has observed that the general point pressed by Jackson presents "an important constitutional question that may deserve a thorough review when the appropriate time comes." *Sealed Appellee 1 v. Sealed Juvenile 1*, No. 15-20262, slip op. at 6 (5th Cir. Mar. 9, 2018) (unpublished) (declining, on ripeness grounds, to reach constitutionality of prosecution of juvenile under federal statute containing mandatory minimum of life imprisonment). On first blush, that time might appear to be at hand: it seems at least debatable whether a juvenile offender may constitutionally be resentenced to a punishment that, while consistent with *Miller*, is not authorized by the statute governing the substantive criminal offense. *Compare Under Seal*, 819 F.3d at 726 (supporting the negative side of the debate), *with United States v. Conyers*, 227 F. Supp. 3d 280, 290–91 (S.D.N.Y. 2016) (supporting the affirmative side by rejecting juvenile offender's due process claim and allowing the government to proceed with prosecuting defendant as an adult under the federal murder-in-aid-of-racketeering statute).

Nonetheless, the Louisiana Legislature has made other arrangements. Article 878.1 of the Code of Criminal Procedure, as it existed when Jackson was resentenced, required a state trial court to conduct a hearing before imposing a life-without-parole sentence on a juvenile murder defendant. *State v. Evans*, 245 So. 3d 1112, 1117–18 (La. Ct. App. 2018). Section 15:574.4(E), in turn, "provided the conditions, including serving 35 years (now 25 years) of the sentence imposed, before the defendant could apply to the parole board for parole consideration." *Id.* at 1118.

But the same year these statutes were enacted, the Louisiana Supreme Court held that they applied only prospectively to new offenders not yet sentenced. *See Tate*, 130 So. 3d at 844. Subsequent efforts to amend the statutes to make them retroactive stalled during the 2016 legislative session. *Montgomery*, 194 So. 3d at 608. So, at the time of Jackson's resentencing, these statutes were employed solely by virtue of the Louisiana Supreme Court's "guidance" in lieu of legislative action. *Id.* It was not until August 2017—the year after Jackson's resentencing—that the Legislature amended Article 878.1 and Section 15:574.4 to make them retroactive. *State v. Brooks*, 247 So. 3d 1071, 1074 (La. Ct. App. 2018). So, Jackson was indeed resentenced under a substantive criminal statute to a penalty not authorized by that statute, at a time when no other supplemental statute authorized courts to modify the sentences of defendants in Jackson's position to bring them into compliance with *Miller* (that only came later).

The problem for Jackson is that, irrespective of any defects in his October 2016 resentencing and any putative relief in the form of another resentencing under a now-constitutional statutory scheme, the current, retroactive versions of Article

> 878.1 and Section 15:574.4 *require* that he receive the *exact same* sentence and consideration for parole eligibility. Under the 2017 amendments, Section 15:574.4(G) governs Jackson's parole eligibility. *See id.* That section provides that, so long as certain conditions are met, a person serving a life sentence for second-degree murder is entitled to parole eligibility "*[n]otwithstanding any provision of law to the contrary*." La. R.S. 15:574.4(G) (2017) (emphasis added). In other words, even though the second-degree murder statute does not itself authorize Jackson's modified sentence, a separate, overriding, retroactive provision now does. And these provisions combine to mandate the same sentence—life imprisonment with the possibility of parole, with parole eligibility to be determined under Section 15:574.4—as Jackson's operative sentence. That result obtains automatically and without any rehearing. *See* La. Code Crim. Proc. art. 878.1(b)(2)(a) ("If the court determined at the hearing that was held prior to August 1, 2017, that the offender's sentence shall be imposed with parole eligibility, the offender *shall* be eligible for parole pursuant to R.S. 15:574.4(G)." (emphasis added)). Accordingly, Jackson's "argument that, in granting him parole eligibility, the trial court exceeded its authority, and violated due process and the separation of powers[,] is moot." *Brooks*, 247 So. 3d at 1074; *see also Cty. of L.A. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citation omitted).
>
> "Mootness, of course, is a fundamental bar to judicial review that must be accounted for at all stages of a proceeding, and applies in habeas as in any other type of litigation"—including at the COA stage. *Miller v. Glanz*, 331 F. App'x 608, 610 (10th Cir. 2009) (unpublished opinion) (denying COA on mootness grounds). *See also Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016) (same). Even if Jackson were correct about the first two alleged constitutional flaws in his October 2016 resentencing, his claims are moot. *See, e.g.*, *Perkins v. Cain*, 2018 WL 1442901, at *2, 2018 U.S. Dist. LEXIS 48427, at *6 (M.D. La. Feb. 28, 2018) ("Petitioner's claim has since been rendered moot because Petitioner has effectively been statutorily re-sentenced by operation of recent amendments to Louisiana law [Article 878.1 and Section 15:574.4] such that he is now eligible for parole consideration in accordance with certain statutory requirements."). Jackson therefore is not entitled to a COA on these issues.

*Jackson*, 981 F.3d at 414-16 (footnotes omitted).

The result is the same here: Petitioner has effectively been statutorily re-sentenced by operation of LA. CODE CRIM. PROC. art. 878.1, and LA. REV. STAT. § 15:574.4. Moreover, he was statutorily re-sentenced to the same amended sentence he already received on January 12, 2017: "life with eligibility for parole consideration consistent with La. C. Cr. P. art. 878.1 and

La. R.S. 15:574.4(E)." *Clemons*, 289 So. 3d AT 1167. Even assuming Petitioner raised the claim as described above (i.e. that the second-degree murder statute does not authorize any punishment that may be constitutionally imposed on juvenile offenders and that therefore he may not be convicted of second-degree murder), his claim would be moot.[9]

Overall, it plainly appears that Petitioner is not entitled to relief, it is perfectly clear that he does not raise a colorable federal claim, and the Court is convinced that his claims lack merit. Accordingly, the Court should summarily dismiss this Petition.

## Conclusion

For reasons above, **IT IS RECOMMENDED** that Petitioner Charles Clemons's Petition for writ of habeas corpus be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by FED. R.**

---

[9] Because the state appellate court did not address the merits of this potential, ostensible claim, the undersigned reviewed the claim *de novo*. *Burkett v. Thaler*, 379 F. App'x 351, 359 (5th Cir. 2010) ("Because the state court misconstrued Burkett's ineffective assistance claim, we cannot say that the claim was "adjudicated on the merits" for the purposes of AEDPA . . . . [and therefore] our precedent under AEDPA requires that we apply de novo review rather than the usual highly deferential standard."); *Panetti v. Davis*, 863 F.3d 366, 374–75 (5th Cir. 2017) ("Where, as here, the state courts have not reached the merits of a petitioner's claims, federal courts will review *de novo*.").

16

**CIV. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

In Chambers, Monroe, Louisiana, this 29th day of December, 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE